# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 11-2097, 11-2185

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS LOCAL UNION NO. 50,

*Plaintiff-Appellee,*

*v.*

KIENSTRA PRECAST, LLC,

*Defendant/Third Party
Plaintiff-Appellant,*

*v.*

ILLINI CONCRETE, INC.,

*Third Party Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:10-cv-00695-GPM-SCW—**G. Patrick Murphy**, *Judge.*

ARGUED DECEMBER 2, 2011—DECIDED DECEMBER 13, 2012

Before RIPPLE and ROVNER, *Circuit Judges*, and FEINERMAN, *District Judge.*[*]

FEINERMAN, *District Judge*.   Illini Concrete, Inc., formally ceased doing business in October 2009 and sold certain of its assets, including delivery trucks, to Kienstra Precast, LLC. According to the complaint filed against Kienstra by the International Brotherhood of Teamsters Local Union No. 50 ("Local")—which represents concrete mixer drivers and others employed by Illini Concrete and then by Kienstra—Kienstra proceeded to lay off fourteen employees, declined to make good on Illini Concrete's unfunded liability to its employees' union pension fund, subcontracted work to competitors to avoid hiring back the laid-off union employees, and refused to hear grievances regarding the asset sale and its effect on the employees. The complaint alleges that the asset sale was a ruse to allow Illini Concrete to evade its obligations under its collective bargaining agreement with the Local ("Illini CBA"). The Local claims that Kienstra breached the Illini CBA, and seeks a declaration that Kienstra is Illini Concrete's alter ego, that Kienstra thus is bound by the Illini CBA, and that the CBA obligated Kienstra to bargain over the displacement of the laid-off union employees.

Kienstra impleaded Illini Concrete as a third-party defendant, and each moved to compel arbitration, arguing that the Local's claims are covered by an arbitration clause

---

[*]   The Honorable Gary Feinerman, of the Northern District of Illinois, sitting by designation.

in the Illini CBA. The district court denied the motions to compel arbitration, holding that the question whether Kienstra is Illini Concrete's alter ego, and thus whether Kienstra is bound by the Illini CBA, does not fall within the scope of the Illini CBA's arbitration clause. 2011 WL 1749997 (S.D. Ill. May 6, 2011). Kienstra and Illini Concrete have taken an interlocutory appeal of that ruling.

The merits cannot be reached unless we have appellate jurisdiction. Sections 1291 and 1292(a)(1) of Title 28 do not permit an interlocutory appeal of the district court's denial of Illini Concrete's and Kienstra's motions to compel arbitration. *See Sherwood v. Marquette Transp. Co.*, 587 F.3d 841, 843-45 (7th Cir. 2009); *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 530 (7th Cir. 1996); *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Cartage Co.*, 84 F.3d 988, 990-92 (7th Cir. 1996). Recognizing this, Kienstra and Illini Concrete submit that appellate jurisdiction lies under a provision of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1), that permits interlocutory appeals of district court rulings that grant or deny motions to compel arbitration or that stay litigation pending arbitration. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627-29 (2009); *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir. 2010); *French v. Wachovia Bank*, 574 F.3d 830, 833 (7th Cir. 2009).

In its merits brief, the Local maintained that this court does not have appellate jurisdiction because § 1 of the FAA, 9 U.S.C. § 1, exempts from the FAA's scope lawsuits involving *any* contract of employment. The

Local abandoned that broad contention at oral argument, and rightly so. Section 1 states that "nothing [in the FAA] shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. In rejecting the notion that § 1 exempts *all* employment contracts from the FAA, the Supreme Court in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), held that "[s]ection 1 exempts from the FAA *only* contracts of employment of transportation workers." *Id*. at 119 (emphasis added). By "transportation workers," the Supreme Court meant workers, like the "seamen and railroad employees" expressly referenced in § 1, that are "actually engaged in the movement of goods in interstate commerce." *Circuit City*, 532 U.S. at 112.

So, if the Illini CBA is a "contract of employment of . . . workers engaged in . . . interstate commerce" within the meaning of § 1, then § 16(a)(1) does not apply here, in which case we have no appellate jurisdiction and must dismiss the appeal, just as we did in *Central Cartage*, 84 F.3d at 993. The Local did not challenge appellate jurisdiction on that particular ground in either its brief or at oral argument. Kienstra and Illini Concrete took affirmative steps in their joint reply brief to fend off such a challenge, arguing that "the operations of Illini prior to the sale of assets and the operation of . . . Kienstra subsequent to the sale were restricted to three counties in Southern Illinois." Reply Br. at 6. From this premise, they argued that "the employees affected by this cause of action were not engaged in the transportation of goods in interstate commerce and do not fall within the narrow exception found in [§ 1 of] the FAA." *Ibid*.

Although Kienstra and Illini Concrete argued that their workers were not engaged in the movement of goods in interstate commerce and the Local did not speak to that particular issue, "[a] court of appeals has an obligation to examine its jurisdiction sua sponte, even if the parties fail to raise a jurisdictional issue." *Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 660 (7th Cir. 1998) (per curiam). In an order issued after oral argument, we questioned whether Kienstra and Illini Concrete had truly meant to say in their joint reply brief that their trucking employees' activities were strictly limited to three counties in southern Illinois. We noted that those three counties (St. Clair, Monroe, and Randolph) are in a region of Illinois known as Metro East, directly across the Mississippi River from St. Louis, Missouri, and its environs. Given the nature of the Metro East economy, we said, it would be somewhat unusual if the truckers did not occasionally carry loads into Missouri. And if they did, we added, our appellate jurisdiction likely would fail.

Concluding that the record as it stood did not shed light on that factual question, we ordered a limited remand for the district court to determine whether the truckers ever carried loads into Missouri or other States on behalf of Illini Concrete or Kienstra. The district court held an evidentiary hearing at which the Local called two truckers who had carried loads for Illini Concrete and Kienstra. The district court issued an order finding that the truckers made deliveries into Missouri on Illini Concrete's behalf, but making no finding as to whether the interstate deliveries continued after

Kienstra took over. (The two truckers testified that they did not carry loads into Missouri while employed by Kienstra, but the district court appropriately did not offer an opinion as to whether their experience reflects the experience of all other truckers who carried loads for Kienstra.)

After the district court entered its order, we allowed the parties to file supplemental briefs regarding appellate jurisdiction. The Local now takes the position that we lack appellate jurisdiction, while Kienstra and Illini argue the contrary. We agree with the Local.

This case is materially indistinguishable from *Central Cartage*. The plaintiff in *Central Cartage*, a union pension fund, sued Central Cartage, a company that employed the union's workers, alleging that Central Cartage had breached its contractual obligation to pay employer contributions to the fund. 84 F.3d at 989. Central Cartage moved to compel arbitration, the district court denied the motion, and Central Cartage appealed. *Ibid*. We first held that 28 U.S.C. § 1291(a) does not grant jurisdiction over an interlocutory appeal of an order refusing to stay or dismiss district court proceedings in favor of arbitration. *Id*. at 990-92. We then held—presaging the Supreme Court's ruling in *Circuit City*—that § 1 of the FAA excludes from the FAA's coverage only employment contracts of transportation workers, meaning workers engaged in the movement of goods across state lines—that appellate jurisdiction did not lie under 9 U.S.C. § 16(a)(1). We explained our holding as follows:

The appellant, Central Cartage, is primarily engaged in local trucking and occasionally transports cartage across state lines. We hold that the workers of Central Cartage (covered in the collective bargaining agreement at issue between Central Cartage and the Pension Fund) therefore qualify as "transportation" workers. Because the Arbitration Act does not apply to "transportation" workers, *see* § 1, Central Cartage's NMFA (the collective bargaining agreement) for its workers is not covered by the Act. Thus the jurisdictional provisions of § 16 of the Act are not applicable to Central Cartage's appeal.

84 F.3d at 993.

The same result obtains here. Although Illini Concrete was primarily engaged in operations within Illinois, its truckers occasionally transported loads into Missouri. This means that the truckers were interstate transportation workers within the meaning of § 1 of the FAA as interpreted by *Circuit City*, which in turn means that the Illini CBA is excluded from the FAA's coverage. Because the Illini CBA is excluded from the FAA's coverage, jurisdiction over this appeal cannot lie under § 16(a)(1) of the FAA. And without § 16(a)(1), we are left without a source of appellate jurisdiction. Illini Concrete and Kienstra offer four arguments to support the contrary position, but none is persuasive.

First, they seek to distinguish *Central Cartage* on the ground that the employees in that case delivered the goods of third parties rather than the goods of their own employer, while Illini Concrete's truckers delivered Illini

Concrete's goods. Illini Concrete and Kienstra do not explain why the distinction, which is nowhere to be found in *Central Cartage* or *Circuit City*, should matter. The distinction in fact does not matter: a trucker is a transportation worker regardless of whether he transports his employer's goods or the goods of a third party; if he crosses state lines he is "actually engaged in the movement of goods in interstate commerce." *Circuit City*, 532 U.S. at 112.

Second, Illini Concrete and Kienstra seek to distinguish *Central Cartage* on the ground that the employer there was a party to an *interstate* collective bargaining agreement, meaning that it covered workers in more than one State, while the Illini CBA is an *intrastate* CBA, covering only workers in Illinois. That distinction, too, is irrelevant to the § 1 analysis, which focuses on whether the workers employed under a given contract are or are not interstate transportation workers, not on whether the contract covers workers in multiple States. In fact, *Circuit City* makes clear that an interstate CBA covering non-transportation workers (in that case, sales counselors) would *not* invoke the § 1 exclusion. *See* 532 U.S. at 119.

Third, Illini Concrete and Kienstra point out that the number of interstate deliveries made by Illini Concrete's truckers was a small proportion of their total workload, the remainder of which was intrastate. That is true: each trucker who testified at the hearing estimated that he had made 1500 to 1750 deliveries each year, of which only a few dozen were to Missouri. But that does nothing to distinguish this case from *Central Cartage*, which held

that § 1 applied where the employer was "*primarily* en-gaged in local trucking and *occasionally* transport[ed] cartage across state lines." 84 F.3d at 993 (emphases added). *Central Cartage* was correct in this respect, as there is no basis in the text of § 1 for drawing a line be-tween workers who do a lot of interstate transportation work and those who cross state lines only rarely; both sorts of worker are "engaged in foreign or interstate commerce."

Fourth, Illini Concrete and Kienstra contend that § 1 does not apply to this case because the district court did not find that truckers crossed the Illinois-Missouri state line while working for Kienstra. Because Illini Concrete employees engaged in interstate transportation work, it does not matter whether Kienstra employees did so as well. The Local brought this suit to enforce the Illini CBA against Kienstra—including to hold Kienstra responsible for unfunded liabilities to the union pension fund that accrued while Illini Concrete employed the workers—and Kienstra is seeking to enforce the Illini CBA's arbitration clause to require that the Local's claims be submitted to an arbitra-tor. The heart of this case is the Illini CBA, which, as shown above, is a contract of employment of interstate transporta-tion workers because the workers made interstate deliver-ies for Illini Concrete. Kienstra's takeover and the cessation of interstate deliveries (if they indeed did cease) did not change the nature of the Illini CBA, and the nature of the CBA suffices under § 1 to exclude it, and thus this case, from the FAA's coverage.

Because the Illini CBA is properly classified under § 1 of the FAA and *Circuit City* as a contract of employment of

workers engaged in the movement of goods in interstate commerce, and there being no basis for distinguishing *Central Cartage*, this appeal is dismissed for lack of appellate jurisdiction.