Filed 12/19/24  Haluska v. CoStar Realty Information CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GREGORY HALUSKA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>COSTAR REALTY INFORMATION, INC. et al.,<br><br>    Defendants and Appellants. | D083499<br><br><br>(Super. Ct. No. 37-2022-00020303-CU-OE-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed in part, reversed in part, and remanded with instructions.

Proskauer Rose, Gregory W. Knopp, Philippe A. Lebel, and Jennifer J. McDermott for Defendants and Appellants.

Blanchard, Krasner & French, David C. Hawkes; Law Offices of David A. Huch, David A. Huch; Matcha Law and Stephen Matcha for Plaintiff and Respondent.

CoStar Group, Inc. and its subsidiary, Costar Realty Information, Inc. (together, CoStar) appeal the trial court's denial of their motion to compel arbitration of Gregory Haluska's class claims.

The Terms and Conditions of Employment and Agreement to Arbitrate Controversies (the Agreement)[1] Haluska signed when he began working for CoStar contains terms requiring arbitration of controversies. This language includes a "Class, Collective, and Representative Action Waiver" (the Waiver) wherein the parties agreed that "covered claims must be brought on an individual basis only, and arbitration on an individual basis is the exclusive remedy." Haluska nonetheless filed a lawsuit, alleging three claims on behalf of himself, a putative class, and a putative subclass, as well as one claim pursuant to the Private Attorney General's Act of 2004 (a PAGA claim).

In ruling on CoStar's subsequent motion to compel arbitration, the court acknowledged authority holding that a party may not waive representative PAGA claims. This rendered the Waiver unenforceable as to the representative, or non-individual, portion of the PAGA claim. However, the court went on to interpret the last portion of the Waiver as containing a "poison pill" provision that rendered the entire arbitration agreement unenforceable. CoStar contends the court erred in so interpreting the Waiver language.

We agree. Therefore, we affirm the order to the extent the court denied CoStar's motion to compel arbitration of Haluska's PAGA claim but otherwise reverse the order. But, because the court did not reach Haluska's additional arguments that the Agreement was unconscionable, we do not order the court to immediately grant CoStar's motion as to the remaining three claims.

---

[1]    We have defined "Agreement" as it is defined in the Agreement itself.

Instead, we remand with directions to address these unconscionability arguments, if Haluska still wishes to assert them.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

#### *The Agreement and Lawsuit*

Haluska began working at Homes.com in 2019 as an inside sales representative. In 2021, CoStar acquired the parent company of Homes.com. Immediately thereafter, Haluska executed the Agreement. Haluska does not dispute that he signed the Agreement.

Section 5.10 of the Agreement contains subsections governing the "Arbitration of Controversies." Subsection (a) provides that, "[i]n the event of any dispute, claim or controversy cognizable in a court of law between [CoStar] and [Haluska] concerning any aspect of the employment relationship, including disputes upon termination, the parties agree to submit such dispute to final and binding arbitration before a single arbitrator pursuant to the provisions of the American Arbitration Association's Employment Dispute Resolution Procedures." The subsection further states that "[t]he parties acknowledge that this mutual requirement to arbitrate disputes applies to claims . . . [under] federal, state, or local law, ordinance, or regulation, or based on any public policy, contract, tort, or common law or any claim for costs, fees, or other expenses including attorney's fees."

Subsection (b) of section 5.10 lists excluded claims, including "claims which are not subject to arbitration or pre-dispute arbitration agreements pursuant to federal law, but only to the extent federal law prohibits enforcement of the Agreement with respect to such claims." It goes on to explain: "To the extent federal law prohibits enforcement of the

3

representative action waiver (discussed in section 5.10(c) below) with respect to representative claims under California's Private Attorneys General Act of 2004, California Labor Code §§ 2698, et seq. . . . such claims also are not covered by this Agreement."

Subsection (c) contains the Waiver, which states in full:

> "The parties agree that covered claims must be brought on an individual basis only, and arbitration on an individual basis is the exclusive remedy. No arbitrator has authority to consolidate claims or proceed with arbitration on multi-plaintiff, class, collective, or representative basis. Should such a claim be initiated in the arbitral forum, the arbitrator shall summarily reject it as beyond the scope of this Agreement. Any disputes concerning the applicability or validity of this waiver shall be decided by a court of competent jurisdiction, not by the arbitrator. In the event a court determines that this waiver is unenforceable with respect to any claim, this waiver shall not apply to that claim, and that claim may only proceed in court as the exclusive forum."

Section 5.3 of the Agreement comprises a severability clause expressing the parties' intent to enforce the provisions of the Agreement "to the fullest extent permissible under applicable laws and public policies." It provides that:

> " . . . if any term or provision of this Agreement or any portion thereof is declared illegal or unenforceable by any court of competent jurisdiction, such provision or portion thereof shall be deemed modified so as to render it enforceable, and to the extent such provision or portion thereof cannot be rendered enforceable, this Agreement shall be considered divisible as to such provision which shall become null and void, leaving the remainder of this Agreement in full force and effect."

In May 2022, Haluska filed a complaint in San Diego Superior Court alleging individual and class claims for failure to pay overtime wages in violation of Labor Code sections 510 and 1194, failure to provide accurate

itemized wage statements in violation of Labor Code sections 226 and 226.3, and unlawful and unfair business practices in violation of Business and Professions Code section 17200, et seq. The fourth cause of action was for violation of Labor Code section 2698, et seq.—the PAGA claim.

## II.

### *CoStar's Motion to Compel*

CoStar moved to compel arbitration of Haluska's claims on an individual basis pursuant to the Federal Arbitration Act (FAA) (9 U.S.C. §§ 2−4 (1947)) and to dismiss the putative class and representative PAGA claims. In his original opposition to CoStar's motion to compel, Haluska argued only that the arbitration provisions of the Agreement were unconscionable.

The court continued the hearing on the motion to permit additional, simultaneous briefing regarding the impact of *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 (*Adolph*). In his supplemental brief, Haluska submitted that *Adolph* reinforced the California Supreme Court's prior holding in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 regarding PAGA claims that "an arbitration agreement purporting to waive an employee's non-individual claims is unenforceable as a matter of state law." (*Adolph*, at p. 1118.) Because the Waiver encompassed Haluska's representative PAGA claims, Haluska argued it was invalid. Further, Haluska asserted that the Waiver was non-severable and, thus, the entire agreement to arbitrate was unenforceable.

In response, CoStar argued the Agreement required Haluska to arbitrate his first three causes of action on an individual basis in addition to his individual PAGA claim. It requested the court stay the representative

5

PAGA claim pending a finding by the arbitrator that Haluska was, indeed, an "aggrieved employee," as required by *Adolph*.

## III.

### *The Court's Ruling*

Following oral argument, the court denied CoStar's motion to compel. The court found that CoStar had presented sufficient evidence that the FAA governed the parties' Agreement and that Haluska apparently had conceded as much. It then agreed with Haluska's argument that the language from the last line of section 5.10, subsection (c) stating that, "In the event a court determines that this waiver is unenforceable with respect to any claim, this waiver shall not apply to that claim, and that claim may only proceed in court as the exclusive forum" was a "poison pill" provision that rendered the Agreement unenforceable. The court explained:

> "A 'poison pill' effectively prevents the Court from sending a plaintiff's ' "individual" claims under PAGA (representing the State of California but pursuing "individual" remedies based on the plaintiff's status as a former employee) to arbitration, while allowing litigation in court of her [or his] "representative" claims under PAGA, which involve the rights of other "aggrieved employees." ' *Westmoreland v. Kindercare Education LLC* (2023) 90 Cal.App.5th 967, 982 [(*Westmoreland*)] (holding that such a provision rendered an arbitration agreement invalid and so defendant must litigate all of the plaintiff's claims in court).

> "Had defendants only included a waiver of class and representative claims in its arbitration agreement, and not included this poison pill at the end, the result could have been substantially similar to *Viking River* and many decisions that follow it. But in light of the drafting decisions made to the arbitration agreement and its waiver provision, the agreement is unenforceable and so defendants must litigate all of Haluska's claims in court."

6

In light of this conclusion, the court did not reach the parties' additional arguments regarding Haluska's contentions that the Agreement was unconscionable.

## DISCUSSION

## I.

### *Poison Pill Provision*

The "FAA's primary purpose [is] ensuring that private agreements to arbitrate are enforced according to their terms." (*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 479.) Generally, arbitration agreements are interpreted using state contract law principles. (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 244; *Muller v. Roy Miller Freight Lines, LLC* (2019) 34 Cal.App.5th 1056, 1070–1071.) Where, as here, the arbitration agreement dictates that the laws of the State of California shall govern disputes, we apply California rules of contract interpretation. (See *Sandquist*, at p. 244.)

The court's interpretation of the final sentence of the Waiver as constituting a "poison pill" justifying denial of CoStar's motion to compel arbitration was a decision of law. Accordingly, we review the ruling de novo. (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 686; see also *Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523, 543–544 ["Where, as here, the language of the arbitration agreement is not in dispute and the arbitrability determination was not based on the credibility of extrinsic evidence, the applicable standard is de novo"]; *Truck Ins. Exchange v. Kaiser Cement & Gypsum Corp.* (2024) 16 Cal.5th 67, 91 [interpretation of a contract is a question of law subject to independent review].)

7

CoStar contends that, after finding the Waiver unenforceable only in part (as to the representative PAGA claim), the court was required to determine the effect of this finding under the Agreement's express language. The Waiver subsection provides: "In the event a court determines that this waiver is unenforceable with respect to any claim, this waiver shall not apply to that claim, and that claim may only proceed in court as the exclusive forum." CoStar reads this provision as meaning the Waiver is only unenforceable as to "that claim" (again, the representative PAGA claim), and as requiring only that the representative PAGA claim proceed in court.

In evaluating this assertion, we look to how the terms in this provision are used in the Agreement as a whole and attempt to give effect to the mutual intention of the parties at the time the contract was formed. (*TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27.) Under California law, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (*Id.*, § 1638.) Here, section 5.10, subsection (a) of the Agreement begins by requiring that "In the event of any *dispute, claim or controversy* cognizable in a court of law between [CoStar] and [Haluska] concerning any aspect of the employment relationship, including *disputes* upon termination, the parties agree to submit such *dispute* to final and binding arbitration . . . ." (Italics added.) It then clarifies that "this mutual requirement to arbitrate *disputes* applies to *claims* for misappropriation of trade secrets" (italics added) and those based on "any other federal, state, or local law . . . ." The parties further agreed that this duty to arbitrate extends to "disputes" between Haluska and the company's officers, directors, employees, and

8

agents that arise out of his employment. Subsection (b) lists "[e]xcluded claims." Finally, subsection (c) sets forth the parties' agreement that "covered *claims*" (italics added) must be arbitrated on an individual basis.

Our interpretation of the plain language of the Agreement is that it refers to the overall issue Haluska has with CoStar as a "dispute," which led to a lawsuit. The causes of action set forth in the lawsuit, or raised as part of the "dispute," are referred to as "claims." The parties then must look to section 5.10, subsections (a) and (b) to determine which claims are covered and which are excluded. Those that are "covered claims" must be submitted to arbitration on an individual basis. Thus, it follows that the last sentence of subsection (c) should be construed as equating "claims" with Haluska's causes of action. In other words, it requires that, if a court determines the waiver is unenforceable as to any one cause of action, the waiver does not apply to that cause of action only, and only that cause of action may proceed in court.

This interpretation is in keeping with the language and intent of the severability clause of the Agreement. That clause expresses "the desire and intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible under applicable laws and public policies." In furtherance of this intent, the severability clause states that, "if any term or provision of this Agreement or any portion thereof is declared illegal or unenforceable by any court of competent jurisdiction, such provision or portion thereof shall be deemed modified so as to render it enforceable, and to the extent such provision or portion thereof cannot be rendered enforceable, *this Agreement shall be considered divisible as to such provision* which shall become null and void, leaving the remainder of this Agreement in full force and effect." (Italics added.) Once again, this clause supports a construction

9

of the overall contract as intending to sever only a provision or portion deemed unenforceable while enforcing the remainder of the Agreement.

This contrasts with the language of the arbitration agreement addressed in *Westmoreland*, which the order suggests the court found analogous to this case. There, the employee signed a similar arbitration agreement governed by the FAA. (*Westmoreland*, *supra*, 90 Cal.App.5th at p. 971.) The agreement defined what types of claims were covered and excluded and contained comparable provisions governing severance and waiver of class and collective claims. (*Id.* at pp. 971–972.) However, the so-called "poison pill" in *Westmoreland* is distinguishable in that it provided "that if the Waiver of Class and Collective Claims is found to be unenforceable, then *this agreement is invalid* and *any claim* brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims." (*Id.* at p. 972, italics added.)

As in the instant case, Westmoreland had filed a complaint asserting individual and class claims, as well as individual and representative PAGA claims. (*Westmoreland*, *supra*, 90 Cal.App.5th at pp. 979–980.) The court commented that, "[i]n the absence of the poison pill provision, Kindercare could have compelled arbitration of Westmoreland's non-PAGA claims on behalf of herself alone . . . [and] could also have compelled Westmoreland to waive class claims against it." (*Id.* at p. 980.) However, the court viewed the poison pill provision as "an unambiguous expression of the parties' intent to avoid parallel litigation before an arbitrator and before a court." (*Id.* at p. 979.) Thus, because the waiver clause conflicted with applicable law on PAGA claims and expressly provided that, in that scenario, the "agreement is

10

invalid," the court concluded Kindercare must litigate all of Westmoreland's claims in court. (*Id.* at pp. 980, 982.)

Unlike the poison pill in *Westmoreland*, the final sentence of section 5.10, subsection (c) in the instant Agreement contains no language invalidating the Agreement as a whole, nor does it suggest an intent to avoid parallel litigation. Instead, in keeping with the severability clause, it provides only that if the waiver is deemed unenforceable as to any particular claim, the "waiver shall not apply to *that claim*, and *that claim*" (italics added) must proceed in court. To the extent the intent of the parties can be gleaned from subsection (c), it suggests the goal was to prevent any class or representative actions from proceeding before an arbitrator. Thus, we conclude the variance between the language in the arbitration agreement here and that in *Westmoreland* dictates different outcomes.

We are not persuaded by Haluska's arguments that portions of the Agreement are ambiguous or rendered so by CoStar's interpretation. Most notably, he contends that section 5.10, subsection (b)'s citation to federal law creates uncertainty as to the meaning of the last sentence of subsection (c). Subsection (b) explains that "[t]o the extent federal law prohibits enforcement of the representative action waiver (discussed in section 5.10(c) below) with respect to representative claims under California's Private Attorneys General Act of 2004, California Labor Code §§ 2698, et seq. . . . such claims also are not covered by this Agreement." Haluska believes this provision, which only contemplates a situation in which federal law bars enforcement of the Waiver, conflicts with CoStar's reading of the last sentence of the Waiver. We disagree. The cited provision regarding federal law simply sets forth a category of "excluded claims." At the time the parties entered the agreement, it apparently was foreseeable under the then current state of the law that

11

federal law might invalidate the Waiver as to a PAGA claim. However, that does not make the agreement ambiguous as to other legal impediments to enforcement of the waiver that were not foreseeable at that time. The language from subsection (b) of section 5.10 does not in any way render less clear the severance clause or the instruction that "[i]n the event a court determines that this waiver is unenforceable with respect to any claim, this waiver shall not apply to that claim, and that claim may only proceed in court as the exclusive forum." If anything, although we recognize the court here apparently found enforcement of the representative PAGA claim prohibited by California, not federal law, this provision demonstrates the parties' mutual intent that when the Waiver is deemed unenforceable as to representative PAGA claims, only "such claims" should be considered not covered by the Agreement. Other claims, such as the putative class claims, thus presumably are still to be considered "covered by this Agreement."

On a final note, we observe that, following *Adolph*, CoStar may have persuasively argued that it was entitled to compel Haluska's individual PAGA claim to arbitration even though the representative claim must be pursued in court. (See *Adolph*, *supra*, 14 Cal.5th at p. 1123 [holding that "where a plaintiff has filed a PAGA action comprised of individual and non-individual claims, an order compelling arbitration of individual claims does not strip the plaintiff of standing to litigate non-individual claims in Court"].) However, it does not appear CoStar has requested on appeal to bifurcate the PAGA claim. It asks us only to reverse the court's order as to Haluska's class claims (specifying in its conclusion that it refers to "Haluska's non-PAGA claims (*i.e.*, the first, second, and third causes of action)" while acknowledging that "Haluska may pursue his entire PAGA claim in Court." Therefore, we

reverse the order denying the motion to compel arbitration as to Haluska's first, second, and third causes of action only.

## II.

### *Unconscionability*

Haluska also argued below that the Agreement was procedurally and substantively unconscionable for a variety of reasons and, thus, void. On this basis, he asked the court to deny CoStar's motion to compel arbitration.

The court did not reach Haluska's unconscionability arguments. On appeal, Haluska requests that, should we reverse the court's decision, we address these arguments and find the Agreement unconscionable and void. "Unconscionability is . . . a question of law for the court, although factual issues may bear on that determination." (*Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 892 citing Civ. Code, § 1670.5 ["When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination" before the court determines whether to enforce the clause or contract].) Because the determination may thus turn on the resolution of conflicts in the evidence or on factual inferences to be drawn from the evidence, and we have no record to review on appeal, we remand the matter to the trial court to decide these issues in the first instance.

## DISPOSITION

The order is affirmed to the extent the court denied CoStar's motion to compel arbitration of Haluska's PAGA claim and reversed as to Haluska's first three causes of action. However, because the court did not reach Haluska's additional arguments that the Agreement was unconscionable, we do not order the court to immediately enter an order granting CoStar's

motion as to the three putative class claims.  Instead, we remand with instructions to address these unconscionability arguments, if Haluska still wishes to assert them.

CoStar is entitled to its costs on appeal.

HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.