Filed 2/23/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TONY MURO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CORNERSTONE STAFFING<br>SOLUTIONS, INC.,<br><br>    Defendant and Appellant. | D070206<br><br><br><br>(Super. Ct. No.<br> 37-2015-0007723-CU-OE-CTL) |


APPEAL from an order of the Superior Court of San Diego County,

Joan M. Lewis, Judge.  Affirmed.

Ogletree, Deakins, Nash, Smoak & Stewart, Jack S. Sholkoff, Alexandra

A. Bodnar and Ashley B. McAteer for Defendant and Appellant.

Turley & Mara, William Turley, David Mara and Jamie Serb for Plaintiff and

Respondent.

Plaintiff Tony Muro entered into an employment contract with defendant Cornerstone Staffing Solutions, Inc. (Cornerstone). The contract included a provision requiring that all disputes arising out of Muro's employment with Cornerstone to be resolved by arbitration. It also incorporated a class action waiver provision. In response to Muro's present action, which was styled as a proposed class action and alleged various Labor Code violations, Cornerstone moved to compel arbitration and dismiss the class claims.

Relying heavily on *Garrido v. Air Liquide Industrial, U.S. LP* (2015) 241 Cal.App.4th 833 (*Garrido*), the trial court concluded the contract was exempted from the operation of the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.)[1] and was instead governed by California law. It further determined that the California Supreme Court's decision in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*) (overruled on other grounds in *Iskarian v. CLS Tranportation, Los Angeles, LLC* (2014) 59 Cal.4th 348) continued to provide the relevant framework for evaluating whether the class waiver provision in the contract was enforceable under California law. After applying *Gentry* to the record here, the court found the class waiver provision of the contract unenforceable and denied the motion to compel arbitration. Cornerstone appeals, but finding no error, we affirm.

---

[1] Further statutory references are to the title 9 of the United States Code unless otherwise specified.

2

FACTUAL AND PROCEDURAL BACKGROUND

Cornerstone is a full service employee staffing firm providing assistance to a variety of employers throughout California, Nevada, Michigan, and New Jersey. Cornerstone's website promotes itself as specializing in, among other things, "Logistics & Transportation Staffing & Recruitment". Cornerstone derived over eight percent of its total revenue in 2015 from its transportation division, and has an employee whose self-described position is "Department of Transportation Compliance Coordinator/Payroll Administrator."

Cornerstone hired Muro around May 2012 to drive trucks for Cornerstone's client, Team Campbell, which ships products from its Fontana, California location throughout the country. Muro occupied that position from approximately May 2012 through August 2014. During his tenure as a driver, he had routes both within California and across state lines. He made frequent trips to or through Arizona, Nevada, Utah, Oregon, Washington, New Mexico, Idaho, and Wyoming.

As part of his employment contract, Muro signed an agreement containing the arbitration provisions that are at the center of the present dispute. Under the relevant Mutual Arbitration Policy (the policy), nearly all disputes had to be submitted to binding arbitration.[2] The policy is governed "solely by the Federal Arbitration Act" and provides that arbitration would be pursuant to the National Rules for the Resolution of

---

2    Although the policy excludes some disputes from binding arbitration, the parties do not contest that the claims presented by Muro's current complaint would be covered by the policy.

3

Employment Disputes of the American Arbitration Association. The parties agreed to waive a jury trial and "the right to initiate or proceed on a class action basis or participate in a class action in the arbitration."

Muro filed his initial complaint against Team Campbell and subsequently added Cornerstone as a defendant. The complaint, styled as a proposed class action complaint, alleged causes of action for: (1) failure to pay all compensation for time worked; (2) failure to provide meal periods; (3) failure to authorize and permit rest breaks; (4) knowing and intentional failure to comply with itemized wage statements; (5) failure to pay timely wages due at termination/waiting time penalties; and (6) violation of the unfair competition law.

Cornerstone petitioned to compel Muro to arbitrate his claims on an individual basis. It maintained the FAA applied because Cornerstone and Muro were engaged in interstate commerce and because the policy itself referred to the FAA. It further asserted that the FAA required the court to enforce the policy according to its terms, ordering Muro to arbitrate his various wage and hour claims on an individual basis and dismissing all purported class claims.

Muro opposed the petition claiming he was a "transportation worker" within the ambit of a specific FAA exemption. He argued that under the pertinent analysis in *Garrido*, the FAA did not govern the court's evaluation of Cornerstone's petition to compel arbitration. According to Muro, because the FAA did not apply, California law as expressed in *Gentry* continued to govern. He contended that because he satisfied the *Gentry* factors, the class arbitration waiver provision was unenforceable and his claims

4

should be permitted to proceed in the current civil action. He also argued that under Labor Code section 229, his action to recover unpaid wages could proceed notwithstanding the terms of the policy.

Relying on *Garrido*, the trial court held that the express exemption contained in section 1 made the FAA inapplicable to the policy because Muro was a transportation worker. The court also rejected Cornerstone's claim that it was not part of the "transportation industry," concluding that evidence of Cornerstone's employment of a Department of Transportation Compliance Coordinator and its transportation-related revenues demonstrated that it was "at least somewhat involved in the transportation industry." (*Garrido, supra,* 241 Cal.App.4th at p. 840.) Because the FAA did not apply, the court turned to the California Arbitration Act to assess whether Cornerstone's petition to compel individual arbitration was proper under *Gentry*. It found that each of the four *Gentry* factors militated in favor of finding the policy's class action waiver unenforceable, and therefore denied Cornerstone's petition.

DISCUSSION

When a trial court's order is based on a question of law, we accord no deference to the ruling and instead will review the order de novo. (*Garrido, supra*, 241 Cal.App.4th at p. 839.) A judgment is presumed correct, and if it is correct on any theory, it must be affirmed regardless of the trial court's reasoning. (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1201.) "Decisions on issues of fact are reviewed for substantial evidence." (*Garrido, supra*, at p. 839.) As to the trial court's evaluation on whether Muro met his burden of establishing the *Gentry* factors, an appellate court

5

reviews the ruling under the deferential abuse of discretion standard. (*Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 508 (*Truly Nolen*).)

1.      *The Trial Court Correctly Ruled the FAA Did Not Apply*

The trial court implicitly found, and the parties do not dispute on appeal, that Cornerstone was engaged in interstate commerce and that Muro's employment contract was therefore a contract "evidencing a transaction involving commerce" within the meaning of section 2 of the FAA, which potentially triggers application of the FAA to the policy. (§ 2; see *Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 277.) However, section 1 of the FAA expressly exempts from its coverage all " 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.' " (§ 1; *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 109 [adopting "the better interpretation" of section 1 "as exempting contracts of employment of transportation workers"] (*Circuit City*).) Thus, section 1's reference to "any other class of workers engaged in foreign or interstate commerce" is defined to mean "transportation workers" (*id.* at p. 121), and the courts have consistently "found transportation workers' employment agreements are exempt from the FAA." (*Garrido, supra,* 241 Cal.App.4th at p. 840.)

There is substantial evidence, and indeed Cornerstone does not dispute, that Muro was a driver who transported goods and often did so across state lines. Courts have repeatedly concluded that contracts of employment with drivers whose routes include transporting goods across state lines are "transportation workers" within the meaning of section 1's exemption. (*Garrido*, *supra*, 241 Cal.App.4th at p. 840 ["Garrido was a

6

'transportation worker' under section 1 of the FAA . . . [because he] worked as a truck driver transporting Air Liquide gases, frequently across state lines"]; *Performance Team Freight Systems, Inc. v. Aleman* (2015) 241 Cal.App.4th 1233, 1240 ["Truck drivers who cross interstate lines usually are considered transportation workers"]; *Lenz v. Yellow Transportation, Inc.* (8th Cir. 2005) 431 F.3d 348, 351 ["Indisputably, if Lenz were a truck driver, he would be considered a transportation worker under [section] 1 of the FAA"]; *Harden v. Roadway Package Systems, Inc.* (9th Cir. 2001) 249 F.3d 1137, 1140 ["[T]he FAA is inapplicable to drivers . . . who are engaged in interstate commerce."].)

Cornerstone maintains that Muro's job as a transportation worker, while a necessary predicate, it is not sufficient to trigger section 1's exemption. It urges us to disagree with *Garrido* and instead adopt the rationale of *Hill v. Rent-A-Center, Inc.* (11th Cir. 2005) 398 F.3d 1286 (*Hill*), which concluded that the section 1 exemption applies only to transportation workers who are employed by an employer "within the transportation industry." (*Id*. at p. 1290.)

We decline the invitation because we question whether *Hill's* gloss on section 1 and the *Circuit City* decision are supported by the language of the statute. Section 1 exempts " 'contracts of employment of . . . any other class of workers engaged in foreign or interstate commerce' " without mentioning whether (or to what extent) their employers' business must be devoted to the transportation *industry*. (*Hill, supra,* 398 F.3d at p. 1288.) Similarly, the *Circuit City* court appeared to focus on the worker and his or her job description—rather than on the employer and whether the employer has other nontransportation profit centers—in assessing whether section 1's exemption was

7

triggered.  Absent specific direction from the United States Supreme Court, we decline to engraft additional language on section 1 by requiring that workers who are actually engaged in transporting goods in foreign or interstate commerce *also* prove that their employer is involved in the "transportation industry."

Moreover, even assuming *Hill* correctly determined that the employer's business must be part of the transportation industry, the *Garrido* court rejected the specific argument advanced by Cornerstone here.  In *Garrido*, the defendant-employer relied on *Hill* to argue the exemption was inapplicable "because its primary business does not involve the transportation of third parties' goods."  (*Garrido*, *supra*, 241 Cal.App.4th at p. 840.)  In response, the *Garrido* court observed:

> "*Hill* did not delineate the contours of the 'transportation industry.' Indeed, it appears that the term is not rigid . . . .  [¶]  A significant portion of [defendant-employer's] business involves the transportation of its gases across state lines. Thus, it must be said that [defendant-employer] is at least somewhat involved in the transportation industry.  And unlike the plaintiff in *Hill*—an 'account manager' whose truck delivery duties were incidental to his job (*Hill, supra*, 398 F.3d at pp. 1287, 1289)—Garrido's duty as a truck driver *was* the transportation of goods.  [Defendant-employer] cites to no authority holding that a truck driver whose responsibility is to move products across state lines does not fall under section 1 of the FAA. The fact that Garrido transported [defendant-employer's] own products (rather than those of [the defendant-employer's] client) is of little consequence:  'a trucker is a transportation worker regardless of whether he transports his employer's goods or the goods of a third party; if he crosses state lines he is "actually engaged in the movement of goods in interstate commerce." ' "  (*Garrido, supra,* at pp. 840–841, quoting *International Brotherhood of Teamsters Local Union No. 50 v. Kienstra Precast, LLC* (7th Cir. 2012) 702 F.3d 954, 957.)

We believe *Garrido's* analysis is sound and Cornerstone's contrary arguments are unpersuasive.[3]  Accordingly, we conclude that section 1 exempts Muro's employment contract from the operation of the FAA.

2.      *The Trial Court's Application of Gentry Was Not an Abuse of Discretion*

Because we have concluded the FAA is not applicable, the appropriate test under California law to determine whether to enforce the "class waiver" provisions of an arbitration agreement remains the four-part analysis under *Gentry*.  (See, e.g., *Garrido, supra*, 241 Cal.App.4th at pp. 842–845 [*Gentry* rule remains valid when arbitration is governed by the California law rather than the FAA.].)  In *Gentry*, the court concluded that a party opposing enforcement of an express class waiver clause must make a factual showing under a four-factor test (*Garrido,* at p. 845), which requires the trial court to consider:  (1) "the modest size of the potential individual recovery"; (2) "the potential for retaliation against members of the class"; (3) "the fact that absent members of the class may be ill informed about their rights"; and (4) "other real world obstacles to the

_____

3      Cornerstone contends that the significant revenue it garners from the transportation segment of its business is *irrelevant* because:  (1) its primary revenue is from staffing rather than transportation; (2) there are trade associations for the staffing industry that are distinct from the trade associations for the transportation industry; and (3) the Bureau of Labor Statistics groups the administrative and support service industry into a different sector from the transportation industry.  The defendant in *Garrido*, as a producer and distributor of industrial gases (*Garrido, supra,* 241 Cal.App.4th at p. 838), would likely have been grouped into a different sector as well.  More importantly, we believe at a minimum that if a worker is employed exclusively as a transportation worker in the segment of the employer's business *devoted* to transportation, the section 1 exemption is triggered.  A transportation worker does not forfeit the benefit of the exemption merely because the employer has *other* divisions or segments devoted to nontransportation activities.

vindication of class members' rights . . . through individual arbitration." (*Gentry, supra*, 42 Cal.4th at pp. 453, 463.) *Gentry* held that a trial court may decline to enforce a class action waiver if it concludes, based on these factors, that class arbitration is "likely to be a significantly more effective practical means of vindicating the rights of affected employees than individual litigation or arbitration," and that there would be a "less comprehensive enforcement" of the applicable laws if the class action device is disallowed. (*Id*. at p. 463.)

It is the plaintiff's burden to show the class action waiver is invalid by making a factual showing of the four *Gentry* factors. (*Kinecta Alternative Financial Solutions, Inc. v. Superior Court* (2012) 205 Cal.App.4th 506, 517.) The court has broad discretion in ruling on this issue (*Gentry, supra*, 42 Cal.4th at pp. 463–464) and, to the extent its determination "depended on resolution of disputed issues of fact or inferences to be drawn from the evidence, we review these determinations for substantial evidence." (*Garrido, supra*, 241 Cal.App.4th at p. 845.) We conclude the trial court's factual determinations were supported by substantial evidence, and its decision that *Gentry* was satisfied was not an abuse of discretion.[4]

On the first factor, Muro's attorney submitted a detailed evaluation of his calculations, which employed "liberal assumptions" to estimate Muro's maximum individual recovery would be less than $26,000; the trial court found this amount

---

4    Because Cornerstone's appeal only challenges the trial court's findings as to the first three *Gentry* factors, we need not evaluate the court's conclusion that the fourth factor (other real world obstacles to the vindication of employee rights) was also satisfied.

qualified as a "modest" recovery within the meaning of *Gentry*. A potential award of as large as $37,000, which the court in *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 745 (*Bell*) concluded did not necessarily "provide[] 'ample incentive' for an individual lawsuit," was cited in *Gentry* with approval in its discussion of the import of the "modest" potential recovery in the analysis. (*Gentry, supra*, 42 Cal.4th at p. 458.) Indeed, the *Gentry* court observed that "wage and hour cases will generally satisfy the 'modest' recovery factor because they 'usually involve[] workers at the lower end of the pay scale.' " (*Garrido, supra*, 241 Cal.App.4th at p. 846, quoting *Gentry, supra*, at pp. 457–458.) Muro's claims here fall within these general parameters.[5]

---

[5] Cornerstone cites the observation in *Arguelles-Romero v. Superior Court* (2010) 184 Cal.App.4th 825 (*Arguelles-Romero*) that a $16,000 recovery "is not so small that individuals would not be willing to spend the time and effort to pursue an individual claim for the amount, particularly when the prospect of an award of statutory attorney fees is also possible." (*Id.* at p. 844.) It appears to contend that any recovery above the $25,000 threshold set by the Legislature for a "limited civil case" matter (see Code Civ. Proc., § 85, subd. (a)) is, as a matter of law, not a "modest" recovery within the meaning of *Gentry*. Cornerstone's reliance on *Arguelles-Romero* is unpersuasive for at least two reasons. First, it appears to conflict with the much higher amounts discussed in *Bell, supra,* 115 Cal.App.4th at page 715. More importantly, the cited comment by the *Arguelles-Romero* court was part of its discussion of whether the class waiver provision was invalid as unconscionable under *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, and *not* whether, under *Gentry*, "a class arbitration (or action) is a significantly more effective practical means of vindicating unwaivable statutory rights, which is a discretionary determination subject to abuse of discretion review." (*Arguelles-Romero, supra* at pp. 841, 844.) While *Arguelles-Romero* did conclude the $16,000 figure was inadequate to "establish[] the prerequisite to their theory of substantive unconscionability—that the claims are so small that a class action is the only viable means of enforcement" (*id.* at p. 844)—*Arguelles-Romero* recognized that same recovery did *not* necessarily obviate the *Gentry* analysis because it remanded the matter to the trial court to determine whether the class action waiver should be invalidated under *Gentry*. (*Arguelles-Romero,* at p. 845.)

11

Muro also submitted evidence on the second factor—the risk of retaliation—which the trial court found was adequate to satisfy *Gentry*. Muro's declaration indicated he did not feel realistically able to bring a lawsuit because he feared he would be fired or retaliated against. Although the trial court sustained Cornerstone's evidentiary objections to Muro's statement that other drivers had the same fears, Muro's expression of his own concerns about retaliation provided a sufficient basis for the court, as the finder of fact, to draw the reasonable inference that other similarly situated drivers shared those same concerns. *Gentry* recognized that "retaining one's employment while bringing formal legal action against one's employer is not 'a viable option for many employees.' " (*Gentry, supra*, 42 Cal.4th at pp. 453, 459.) Comparable evidence has been found adequate to support the factual determination of the potential for retaliation (*Garrido, supra*, 241 Cal.App.4th at p. 846; accord, *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1296 [plaintiff's declaration stating he felt he would be fired if he complained satisfied second factor of the *Gentry* analysis]), which is sufficient here.

On the third factor—whether absent class members might be ill-informed about their rights[6]—Muro's declaration stated *he* (1) did not know what his rights were when he worked for Cornerstone, (2) did not understand he was not getting paid for all hours worked and not receiving his meal and rest breaks according to California law, and (3)

---

6    On this third factor, *Gentry* observed "it may often be the case that the illegal employer conduct escapes the attention of employees" and "some individual employees may not sue because they are unaware that their legal rights have been violated." (*Gentry, supra*, 42 Cal.4th at p. 461.)

12

was not informed by Cornerstone of his rights under California law.  We disagree with Cornerstone's assertion that there must be affirmative evidence that rights were not communicated to absent class members in order to satisfy the third *Gentry* factor.[7]  Here, Muro declared he was unaware of his rights and Cornerstone made no effort to inform him of such rights.  Citing similar evidence, the *Garrido* court concluded "the trial court could reasonably infer that absent class members may be ill informed of their rights." (*Garrido, supra*, 241 Cal.App.4th at p. 846.)  Here, the trial court expressly drew that inference, noting "[Muro's] declaration further confirms that his employer did not inform him of his rights and . . . it is reasonable for this [c]ourt to infer that putative class members may not have been informed of their rights."

We conclude that, in light of these determinations, the trial court correctly found a class proceeding would be a significantly more effective way of permitting the employees to enforce their statutory rights.  (See *Gentry, supra*, 42 Cal.4th at pp. 463–464.) Cornerstone's petition sought exclusively individual rather than class arbitration, and neither party has indicated an intent or willingness to engage in class arbitration.  For these reasons, based on its finding the class waiver constituted an unlawful exculpatory clause, the trial court properly denied the petition to compel arbitration.

---

[7]     Cornerstone misreads *Truly Nolen, supra*, 208 Cal.App.4th at pages 510–511 as "stating that [the] third *Gentry* factor is not met when plaintiff failed to provide any evidence of rights not being communicated to other employees."  In *Truly Nolen*, the only competent evidence from the two plaintiffs was that "they were *aware* of their rights under wage and hour laws, and expressly notified their manager that their rights were being violated . . . ."  (*Id.* at p. 510.)  While such an evidentiary record might require affirmative evidence that other employees were *not* similarly situated, that is not the case here.

13

DISPOSITION

The order is affirmed.  Respondent is entitled to recover his costs on appeal.


                                                              DATO, J.

WE CONCUR:


BENKE, Acting P. J.


AARON, J.