Filed 3/29/21

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSUE BETANCOURT et al., | |
| Plaintiffs and Respondents, | A159528 |
| v. | |
| TRANSPORTATION BROKERAGE SPECIALISTS, INC., | (Marin County Super. Ct. No. CIV-1803938) |
| Defendant and Appellant. | |

Defendant Transportation Brokerage Specialists, Inc. appeals from a trial court order denying its motion to (1) compel plaintiff Josue Betancourt to arbitrate his individual claims pursuant to the arbitration provision in his employment agreement; and (2) dismiss or strike his class claims pursuant to the class action waiver also contained in the employment agreement.

In its order, the trial court applied California law after finding that plaintiff was exempt from Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA) coverage because he was a transportation worker engaged in interstate commerce. The trial court then denied defendant's motion to dismiss or

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the following portions of the Discussion: Section II. Class Action Waiver; Section III. Severability of Class Action Wavier; Section IV. Unconscionability; and Section V. Section 229 Defense.

strike plaintiff's class claims after finding that the class action waiver was unenforceable. The trial court also denied defendant's motion to compel arbitration of plaintiff's individual claims, concluding that the unenforceable class action waiver rendered the arbitration agreement unenforceable. On appeal, defendant challenges the trial court's findings on FAA inapplicability, unenforceability of the class action waiver, and unenforceability of the arbitration agreement.

We agree with the trial court that plaintiff is exempt from FAA coverage. We also agree that the class action waiver is unenforceable under California law, and affirm the trial court's order denying the motion to dismiss or strike plaintiff's class claims. We reverse, in part, that portion of the trial court order denying the motion to compel arbitration of plaintiff's individual claims and remand for further consideration consistent with this opinion, as the trial court improperly found the arbitration agreement unenforceable in its entirety rather than severing the class action waiver provision from the remainder of the employment agreement.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff worked as a delivery driver for defendant from approximately February 2017 to May 2018. Defendant describes itself as a "last-mile" delivery company whose primary client was online retailer Amazon.com Inc. (Amazon).[1] According to defendant's Chief Operations Officer (COO), Amazon accounted for 99.5% of defendant's overall business and 100% of its business in 2016 and 2017.

---

[1] In its opening brief, defendant represents that Amazon "ended its contract with TBS in early 2020 and no longer utilizes the services of TBS."

## A. Arbitration Agreement

At the start of his employment, plaintiff signed an At-Will Employment, Non-Disclosure, Non-Solicitation, Class-Action Waiver and Arbitration Agreement (Agreement).

Section 6 of the Agreement is entitled "**Arbitration**" and provides, in relevant part: "Any controversy, dispute or claim between the employee and the Company, or its officers, agents or other employees, shall be settled by binding arbitration, at the request of either party." (Emphasis in original.) Section 6 also states: "**Both Company and Employees understand that by using arbitration to resolve disputes they are giving up any right that they may have to a judge or jury trial with regard to all issues concerning employment. The decision of the arbitrator shall be binding and conclusive on the parties and cannot be reviewed for error of law or legal reasoning of any kind. Judgment upon the reward rendered by the arbitrator may be entered in any court having proper jurisdiction.**" (Emphasis in original.)

Section 7 of the Agreement is entitled "**Class Action Waiver**" and provides, in relevant part: "Any Claim must be brought in the respective party's individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiffs, or similar proceeding ('Class Action'). The parties expressly waive any ability to maintain any Class Action in any forum." (Emphasis in original.)

Section 11 of the Agreement is entitled "**Severability**" and states: "If any term, covenant or condition of this Agreement or the application thereof to any person or circumstance is determined to be invalid or unenforceable, the remainder of the Agreement will not be affected thereby, and will continue to be valid and enforceable to the fullest extent permitted by law."

3

(Emphasis in original.)  This section also provides that, within 10 days of signing the Agreement, an employee can mail a written, notarized statement "requesting that either or both of the [arbitration and class action waiver] clauses be revoked."

## B.    Complaint

Plaintiff filed suit against defendant, asserting eight causes of action: (1) failure to provide meal and rest periods (Labor Code §§ 226.7, 512);[2] (2) failure to furnish accurate wage statements (§§ 226, 1174, 1174.5); (3) failure to pay all wages when due and waiting time penalties (§§ 201–204, 1194); (4) failure to reimburse for business expenses (§ 2802); (5) violation of California's Unfair Competition Law (Bus. & Prof. Code § 17200) (UCL); (6) violation of the Private Attorneys General Act (§ 2698 et seq.) (PAGA); (7) unlawful retaliation (§ 1102.5); and (8) wrongful termination in violation of public policy.

The first six causes of action were brought on behalf of plaintiff and a putative class of defendant's delivery drivers, agents and employees.  The seventh and eighth causes of action (for unlawful retaliation and wrongful termination) were brought on behalf of plaintiff in his individual capacity.

## C.    Defendant's Motion

Defendant filed a motion to compel arbitration of plaintiff's individual claims, dismiss or strike the class claims pursuant to the class action waiver in the Agreement, and stay the PAGA claim pending resolution of the claims at arbitration.  Defendant argued that (1) the FAA applied to the Agreement, as the FAA's exemption for transportation workers engaged in interstate commerce was inapplicable to plaintiff; (2) the class action waiver was

---

[2]     Unless otherwise indicated, all further section references will be to the Labor Code.

4

enforceable; and (3) there were no grounds—including, in particular, unconscionability—to preclude enforcement of the arbitration agreement.

In July 2019, the trial court issued a tentative ruling, held the initial hearing on the motion, and ordered limited discovery on the issue of interstate commerce. The parties then submitted supplemental briefing. Plaintiffs' supplemental briefing included, among other things, declarations from plaintiff and four putative class members, as well as an attorney declaration estimating the potential recovery for plaintiff and these putative class members. A second hearing took place in early December 2019, at which time defense counsel requested a statement of decision.

### D.     Trial Court's Ruling on Motion

On December 31, 2019, the trial court issued its statement of decision denying the motion. The trial court first found defendant had met its burden to demonstrate the existence of an agreement to arbitrate, and thus the burden shifted to plaintiff to prove a ground to deny enforcement of the agreement. The trial court then adopted its finding from its July 2019 tentative ruling that the FAA was inapplicable because plaintiff was engaged in interstate commerce.

The trial court then found the class action waiver unenforceable under the four-factor test from *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*). First, the potential individual recovery was small because the estimated range of awards varied from $16,376 to $36,512 per employee. Second, the declarations of plaintiff and the putative class members showed that the employees would not have been willing to bring a lawsuit during their employment because of fear of retaliation, as they had experienced and witnessed retaliation. Third, the declarations demonstrated that absent class members may have been ill informed of their rights, as plaintiff and the

5

putative class members attested that they were unaware of their rights during employment, and were unable to take breaks because of their tight schedules but were still forced to indicate on their timecards that they had taken those breaks. Fourth, there were real world obstacles to the vindication of employee's rights, as " 'the instant case involves precisely the sort of arbitration agreement with a class action waiver entered as a condition of employment by low-wage, limited-information employees in vulnerable, at-will employment environments[.]' " (*Garrido v. Air Liquide Industrial U.S. LP* (2015) 241 Cal.App.4th 833, 847 (*Garrido*).)

Based on the trial court's analysis of the *Gentry* factors, it concluded that both the class action waiver *and* the arbitration provision were not enforceable. Hence, it denied the motion as to both (1) arbitration of plaintiff's individual claims, and (2) dismissal or striking of the class claims. The trial court noted that, although "not necessary" to its denial, it had considered plaintiff's arguments as to procedural and substantive unconscionability of the Agreement. In the July 2019 tentative ruling, the trial court found that plaintiff had met his burden on procedural unconscionability, showing "some level of oppression with regard to the manner in which the agreement was presented and signed," and "at least a small degree" of surprise involved. The trial court then found one substantively unconscionable provision (preventing judicial review for error of law or legal reasoning of any kind), but determined that it could be severed. Thus, the trial court concluded that the Agreement, as a whole, was not unconscionable. The trial court expressly adopted this reasoning as part of its statement of decision, "[t]o the extent relevant to a review of the court's denial[.]"

6

The trial court declined, however, to address plaintiff's defense to the motion that he had stated claims for the collection of due and unpaid wages, and that section 229 prohibits the arbitration of those claims. The statement of decision also did not address plaintiff's PAGA claim.

Defendant timely appealed.

## DISCUSSION

Defendant argues that the order denying its motion should be reversed for five reasons. First, defendant argues that the trial court erred in finding that plaintiff is exempt from FAA coverage as a transportation worker engaged in interstate commerce. Second, defendant argues that even if the FAA does not apply, the trial court erred in finding that the class action waiver was unenforceable under California law. Third, defendant argues that even if the class action waiver was unenforceable, the trial court erred in finding that the class action waiver rendered the *entire* arbitration agreement unenforceable. Fourth, defendant argues that the arbitration agreement should be enforced because it was not unconscionable. Fifth, defendant argues that there are no other grounds to deny its motion to compel arbitration of plaintiff's individual claims because section 229 does not apply to those claims. We address each argument in turn.

## I.    FAA EXEMPTION

The FAA was enacted by Congress in 1925 as "a response to hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice." (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 111 (*Circuit City*).) Section 2 of the FAA provides that contracts "evidencing a transaction involving commerce" and containing arbitration provisions "shall be valid, irrevocable, and

7

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Section 1 of the FAA, however, provides a limited exemption from FAA coverage to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." (9 U.S.C. § 1.) In *Circuit City*, the United States Supreme Court concluded that the catchall clause in section 1—"any other class of workers engaged in foreign or interstate commerce"—does not refer to *all* workers involved in foreign or interstate commerce, but rather only to "transportation workers." (*Circuit City*, *supra*, 532 U.S. at p. 119.) *Circuit City* reasoned that such an interpretation was consistent with "Congress' demonstrated concern with transportation workers and their necessary role in the free flow of goods," which "explains the linkage to the two specific, enumerated types of workers identified in the preceding portion of the sentence." (*Id.* at p. 121.) *Circuit City* did not, however, elaborate on what job types or duties would qualify an employee as a "transportation worker" under this catchall. (*Id.* at p. 119.)

In the wake of *Circuit City*, courts have grappled whether particular employees can be defined as a "transportation worker" under the FAA exemption. Such questions require a case-by-case factual determination, with the party opposing the motion to compel arbitration bearing the burden to demonstrate that the exemption applies. (*Muller v. Roy Miller Freight Lines, LLC* (2019) 34 Cal.App.5th 1056, 1069 (*Muller*); *Performance Team Freight Systems, Inc. v. Aleman* (2015) 241 Cal.App.4th 1233, 1241.) As FAA applicability is a question of law, we review the trial court's determination de novo. (*Garrido*, *supra*, 241 Cal.App.4th at p. 839.)

*Nieto v. Fresno Beverage Co., Inc.* (2019) 33 Cal.App.5th 274 (*Nieto*) is instructive here. In *Nieto*, the appellate court concluded that a beverage

8

delivery driver who only made *intra*state deliveries still fell within the exemption.  (*Id.* at p. 284.)  The beverages, including some manufactured out-of-state, were sent first to an in-state warehouse and held for a short period of time, and then picked up by the driver and delivered to customers.  (*Ibid.*)  Accordingly, *Nieto* reasoned that the driver's deliveries "were essentially the last phase of a continuous journey of the interstate commerce" for the out-of-state beverages to reach their destination to customers.  (*Ibid.*)  *Nieto* thus concluded that the driver was exempt from FAA coverage because he was "engaged in interstate commerce through his participation in the continuation of the movement of interstate goods to their destinations." (*Ibid.*)

Defendant makes five arguments as to why *Nieto* should not be applied here, none of which we find persuasive.  First, defendant contends that federal courts have rejected the "flow of interstate commerce" standard in *Nieto*, instead relying on whether the driver actually traveled out of state. Defendant cites, for example, district court cases holding that drivers for food delivery services like DoorDash and Caviar do not qualify under the FAA exemption because they do not physically cross state lines.  (*Magana v. DoorDash, Inc.* (N.D. Cal. 2018) 343 F.Supp.3d 891, 899; *Levin v. Caviar, Inc.* (N.D. Cal. 2015) 146 F.Supp.3d 1146, 1152 (*Levin*).)  We find these cases factually distinguishable, and entirely consistent with the "flow" analysis in *Nieto*:  as *Levin* explained, prepared meals from local restaurants are not a type of good that is " 'indisputably' part of the 'stream of commerce.' " (*Levin, supra*, 146 F.Supp.3d at p. 1153.)  Unlike out-of-state goods that stop briefly at a warehouse before reaching their destination to the customer, any interstate journey of an ingredient used to prepare restaurant food ends when it reaches its customer:  the restaurant.

9

Second, defendant argues that we must adopt a bright-line rule—that drivers must physically cross state lines to qualify under the exemption—to avoid "complex and extremely unpredictable" enforcement of arbitration agreements under the *Nieto* standard.  As a preliminary matter, defendant's notion of an "easily administrable, bright-line rule is illusory." (*Waithaka v. Amazon.com, Inc.* (1st Cir. 2020) 966 F.3d 10, 25 (*Waithaka*).)  Under such a rule, parties would still litigate over the frequency of crossing and the percentage of overall employees in a class of drivers who would need to cross in order to satisfy the exemption.  Moreover, by not expanding on the definition of "transportation workers," *Circuit City* left the lower courts with a "line-drawing conundrum" to assess which employees meet the definition. (*Waithaka, supra,* 966 F.3d at p. 25.)  "Suffice it to say there is no agreed-upon bright-line rule on who falls within the section 1 exemption." (*Muller, supra,* 34 Cal.App.5th at p. 1064.)  We thus decline to adopt one here.

Third, defendant argues that *Nieto* improperly analogized the language of the FAA exemption to the language of the Fair Labor Standards Act (FLSA), which covers individual workers "engaged in commerce or in the production of goods for commerce."  (29 U.S.C. § 203, subd. (s)(1).)  We disagree with this characterization of *Nieto,* as its only references to FLSA are contained in its summary of the *Levin* analysis.  (*Nieto, supra,* 33 Cal.App.5th at p. 283–284.)

Fourth, defendant contends that *Nieto* was "questioned" by *Muller.* Again, we disagree with defendant's characterization:  as in *Nieto, Muller* concluded that a driver who did not personally cross state lines was exempt from FAA coverage because he played an integral role in transporting out-of-state goods "during part of their journey to their ultimate destination." (*Muller, supra,* 34 Cal.App.5th at p. 1069.)

10

Fifth, defendant argues that even if the standard from *Nieto* is proper, its conclusion is inapposite here because the interstate nature of the goods delivered by plaintiff was based on "unfounded conjecture and speculation." We are not persuaded. Here, plaintiff presented testimony from defendant's COO that Amazon accounted for 99.5% of defendant's overall business and 100% of its business in 2016 and 2017. He testified that defendant's drivers did "last-mile delivery" for Amazon, which he defined as "the last stop of a retail transaction." Drivers would go out to Amazon's "giant warehouses," load their vans with packages, and then deliver them to Amazon customers. The drivers were thus "doing the deliveries to the end person, the retail last mile." Plaintiff similarly attested that his primary job duties were picking up packages from Amazon warehouses and delivering them to Amazon customers. He attested: "Based on [his] personal observations, the packages could have originated from anywhere in the United States or even foreign countries." Plaintiff presented evidence that in 2017, Amazon was already shipping more than five billion items worldwide. At that time, over 300,000 small and medium-sized business in every state in the United States had started selling on Amazon, and Amazon's global selling program (enabling business to sell products across national borders) had grown by over 50%. Nothing in the record suggests that the Amazon goods delivered by plaintiff originated only in California, such that he was making purely intrastate deliveries. We conclude that plaintiff met his burden to demonstrate that he was "engaged in interstate commerce through his participation in the continuation of the movement of interstate goods to their destinations." (*Nieto*, *supra*, 33 Cal.App.5th at p. 284.)

Our conclusion is consistent with the two federal cases involving Amazon last-mile delivery drivers and the FAA exemption. (*Rittmann v.*

11

*Amazon.com, Inc.* (9th Cir. 2020) 971 F.3d 904 (*Rittmann*); *Waithaka, supra,* 966 F.3d 10.) In *Rittmann*, the Ninth Circuit explained that Amazon packages do not " 'come to rest' at Amazon warehouses, and thus the interstate transactions do not conclude at those warehouses. The packages are not held at warehouses for later sales to local retailers; they are simply part of a process by which a delivery provider transfers the packages to a different vehicle for the last mile of the packages' interstate journeys." (*Rittmann, supra,* 971 F.3d at p. 916.) Thus, *Rittmann* concluded that Amazon last-mile delivery drivers are "engaged in interstate commerce" because their "transportation of goods wholly within a state are still a part of a continuous interstate transportation[.]" (*Ibid.*) In *Waithaka*, the First Circuit similarly concluded that Amazon last-mile delivery workers "who haul goods on the final legs of interstate journeys" are transportation workers engaged in interstate commerce "[b]y virtue of their work transporting goods 'within the flow of interstate commerce[.]' " (*Waithaka, supra,* 966 F.3d at p. 26, quoting *Circuit City, supra,* 532 U.S. at p. 118.)

In sum, we conclude that plaintiff is exempt from FAA coverage as a transportation worker engaged in interstate commerce under section 1 of the FAA.

## II. CLASS ACTION WAIVER

Defendant argues that, even if the FAA does not apply, the trial court erred in finding that the class action waiver was unenforceable under California law. In *Gentry*, the California Supreme Court concluded that class arbitration waivers should not be enforced if a trial court determines, based on a four-factor test, that class arbitration "would be a significantly more effective way of vindicating the rights of affected employees than individual arbitration." (*Gentry, supra,* 42 Cal.4th at p. 444.) Defendant argues that

12

the class action waiver is enforceable here because (1) *Gentry* is no longer good law; and (2) even if it is still good law, its four factors support enforcement of the waiver. We address each argument in turn.

**A.     *Gentry***

Defendant cites *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 366 for its argument that *Gentry* is no longer good law. We disagree. *Iskanian* concluded only that the *Gentry* rule is preempted by the FAA; it did not go further to invalidate *Gentry* under California law. (*Garrido*, *supra*, 241 Cal.App.4th at p. 837–838.) Given our conclusion that plaintiff is exempt from the FAA, the *Gentry* rule remains applicable. (*Ibid.*)

**B.     *Gentry* Factors**

Defendant argues next that, even assuming *Gentry* is still good law, the trial court erred in its evaluation of the four *Gentry* factors: (1) the modest size of the potential individual recovery; (2) the potential for retaliation against class members; (3) the fact that absent class members may be ill informed about their rights, and (4) other real world obstacles to the vindication of class members' rights. (*Gentry*, *supra*, 42 Cal.4th at p. 450.) We review the trial court's findings under each factor for substantial evidence, and its ultimate determination on enforceability of the class action waiver for abuse of discretion. (*Muro v. Cornerstone Staffing Solutions, Inc.* (2018) 20 Cal.App.5th 784, 790 (*Muro*).)

On the first factor, the trial court relied on an attorney declaration estimating the potential individual recovery of plaintiff and four putative class members between $16,376 to $36,512. Attorney declarations presenting such estimates, and awards as large as $37,000, have been found to satisfy the first *Gentry* factor. (*Garrido*, *supra*, 241 Cal.App.4th at p. 846; *Muro*, *supra*, 20 Cal.App.5th at p. 793.)

13

On the second factor, the trial court found that the plaintiff and putative class member declarations showed that they would not have been willing to bring a lawsuit during their employment because of fear of retaliation, as they had experienced and witnessed retaliation. Comparable evidence has been found adequate to satisfy the second *Gentry* factor. (*Garrido*, *supra*, 241 Cal.App.4th at p. 846 [where plaintiff's declaration stated that he would not have been willing to bring a lawsuit during his employment out of fear of retaliation]; *Muro*, *supra*, 20 Cal.App.5th at p. 794 [where plaintiff's declaration stated that he did not feel realistically able to bring a lawsuit during his employment for fear he would be fired or retaliated against].)

On the third factor, the trial court found that the declarations showed absent class members may be poorly informed of their rights, as plaintiff and the putative class members attested that they were unaware of their rights during employment; in addition, they were unable to take breaks but forced to falsely indicate on their timecards that they had taken breaks. Citing similar evidence, *Garrido* concluded that "the trial court could reasonably infer that absent class members may be ill informed of their rights." (*Garrido*, *supra*, 241 Cal.App.4th at p. 846.)

Fourth, the trial court found that there were real world obstacles to the vindication of employee's rights, as " 'the instant case involves precisely the sort of arbitration agreement with a class action waiver entered as a condition of employment by low-wage, limited-information employees in vulnerable, at-will employment environments[.]' " (*Garrido*, *supra*, 241 Cal.App.4th at p. 847.) While defendant argues that the "opt-out" provision in section 11 of the Agreement defeats this fourth factor, it cites no authority for this position. In any event, we do not find the argument persuasive:

14

(1) plaintiff attested he was not provided the opportunity to read, review, or understand the Agreement, let alone informed that any of the terms were negotiable; (2) the provision was contained in the severability section, not the arbitration section, of the Agreement; and (3) the provision only states that the employee may *request* revocation of the class action and/or arbitration clauses.

In sum, the trial court's determinations on the four *Gentry* factors were supported by substantial evidence, and the trial court did not abuse its discretion in concluding that the class action waiver was unenforceable under California law, and denying defendant's motion to dismiss or strike the class claims. (*Muro*, *supra*, 20 Cal.App.5th at p. 790.)

## III.   SEVERABILITY OF CLASS ACTION WAIVER

Defendant argues that, even if the class action waiver were unenforceable, the trial court erred in denying its motion to compel arbitration of plaintiff's individual claims by finding that the waiver rendered the *entire* arbitration agreement unenforceable.  We agree.  In general, when an arbitration agreement contains an unenforceable class action waiver, the class action waiver should be severed so that the rest of the arbitration agreement may be enforced. (*Gentry*, *supra*, 42 Cal.4th at p. 466.)  *Gentry* explained the reasoning for this general rule:  "We believe that severance is particularly appropriate in the case of class arbitration waivers because, unlike limitations on remedies or other limitations that are invalid on their face . . . such waivers will only be invalidated after the proper factual showing[.]"  (*Ibid.*)  Plaintiffs offer no basis to depart from the general rule to sever the unenforceable class action waiver.  On the contrary, as the class action waiver is contained in a separate section of the Agreement, it can be severed such that the arbitration provisions are left intact.  (*Little v. Auto*

15

*Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1075.) We thus conclude that the trial court should have severed the class action waiver provision from the remainder of the Agreement.

Upon severing the unenforceable class action waiver, the trial court should have then determined whether there exists a ground to invalidate the arbitration agreement, and whether there is any other defense to the motion to compel arbitration of plaintiff's individual claims. (*Gentry*, *supra*, 42 Cal.4th at p. 466.) These further determinations were required because plaintiff asserted two claims in his *individual* capacity: (1) unlawful retaliation; and (2) wrongful termination. Where an action asserts only class claims and the motion to compel seeks only individual arbitration, a finding that the class action waiver is unenforceable—regardless of its severability— may be dispositive. (E.g., *Garrido*, *supra*, 241 Cal.App.4th at p. 847 [denying motion to compel individual arbitration after finding class action waiver unenforceable, as neither party indicated an intent or willingness to engage in class arbitration].) Here, because plaintiff asserted two individual claims, the enforceability of the severable class action waiver is not dispositive of defendant's motion to compel arbitration of these individual claims.

In opposing the motion to compel arbitration of these individual claims, plaintiff argued that the arbitration agreement was unenforceable because it was unconscionable. The parties contend that the trial court did not "rule" on the question of whether or not the agreement was unconscionable. In its statement of decision, however, the trial court explicitly stated that it had considered plaintiff's unconscionability arguments as part of its July 2019 tentative ruling, and adopted the reasoning set forth in that tentative as part of its statement of decision. Accordingly, we turn next to the issue of unconscionability.

16

## IV. UNCONSCIONABILITY

"The general principles of unconscionability are well established." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).) Unconscionability has both a procedural and a substantive element. (*Ibid.*) Procedural unconscionability " 'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.' " (*Ibid.*) " 'Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' " (*Ibid.*) Both elements must be proven, but are evaluated on a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

"On appeal from the denial of a motion to compel arbitration, '[u]nconscionability findings are reviewed de novo if they are based on declarations that raise "no meaningful factual disputes." ' " (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 820.) " 'However, where an unconscionability determination "is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence." ' " (*Id.* at pp. 820–821.)

### A. Procedural Unconscionability

Procedural unconscionability "begins with an inquiry into whether the contract is one of adhesion." (*Armendariz, supra,* 24 Cal.4th at p. 113.) "An adhesive contract is standardized, generally on a preprinted form, and offered

17

by the party with superior bargaining power 'on a take-it-or-leave-it basis.' " (*OTO*, *supra*, 8 Cal.5th at p. 126.) "The pertinent question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." (*Ibid.*) Oppression occurs " 'where a contract involves lack of negotiation and meaningful choice' " and surprise involves the extent to which " 'the allegedly unconscionable provision is hidden within a prolix printed form.' " (*Ibid.*) "Arbitration contracts imposed as a condition of employment are typically adhesive," and thus we must be " 'particularly attuned' " to the danger of oppression and overreaching in this context. (*Id.* at pp. 126–127.)

Here, the Agreement is a form contract with spaces for the employee's name, initials, and signature. In his declaration, plaintiff attested that the agreement was presented to him "as a condition of [his] employment" along with a stack of other new hire documents, and that he was "unaware" that the Agreement included an arbitration provision. He further attested that he was "not provided with an opportunity to read, review, or understand" the Agreement, and was never informed that "any terms could be negotiated." We thus conclude that there was sufficient evidence to support the trial court's findings that the arbitration agreement was a contract of adhesion involving some level of oppression, and at least a small degree surprise.

Defendant's argument to the contrary is not persuasive. Defendant relies on the same argument it made on the class action waiver: that the arbitration agreement is not procedurally unconscionable because there is an "opt-out" provision in section 11 of the Agreement. We reject this argument for the same reasons described above.

18

## B.    Substantive Unconscionability

Substantive unconscionability arises when a contract imposes unduly harsh or one-sided results.  (*Armendariz*, *supra*, 24 Cal.4th at p. 114.)  "In assessing substantive unconscionability, the paramount consideration is mutuality." (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 664.)  Here, the trial court found that the Agreement provides for mutuality as "[a]ny controversy, dispute or claim between the employee and the Company, or its officers, agents or other employees, shall be settled by binding arbitration, at the request of either party."  We conclude that there was substantial evidence to support the trial court's finding.

Beyond mutuality, "courts often look to whether the agreement meets a minimum level of fairness based on the factors set forth in *Armendariz*." (*Davis v. Kozak* (2020) 53 Cal.App.5th 897, 910.)  These factors include whether the arbitration agreement:  " '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.' "  (*Armendariz*, *supra*, 24 Cal.4th at p. 102.)

Here, the trial court found that the first, second, fourth, and fifth *Armendariz* factors were met.  As to the first factor, the Agreement requires mutual agreement for selection of an arbitrator, and sets forth a process to exchange lists and alternatively strike names if the parties cannot agree.  As to the second factor, the Agreement provides that both parties are entitled to conduct "reasonable discovery," including depositions, requests for document, and requests for interrogatories.  As to the fourth factor, the arbitrator is permitted to award remedies in law or equity, as "requested by the parties

19

and allowed by law." As to the fifth factor, the Agreement provides that defendant will pay for the arbitrator, as well as "other incidental costs of arbitration that would not be incurred in a court proceeding[.]" Hence, there was substantial evidence to support the trial court's findings on these factors. (*Armendariz*, *supra*, 24 Cal.4th at p. 102.)

As to the third factor, the trial court found it problematic that the arbitrator's decision "**cannot be reviewed for error of law or legal reasoning of any kind.**" As *Armendariz* explained: " '[A]lthough judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute' at issue." (*Armendariz*, *supra*, 24 Cal.4th at p. 106, quoting *Shearson/American Express Inc. v. McMahon* (1987) 482 U.S. 220, 232.) Moreover, "judicial review may be appropriate when 'granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights.' " (*Ibid.*, quoting *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 32.) We conclude that there was also substantial evidence to support the trial court's finding on this third factor. (*Armendariz*, *supra*, 24 Cal.4th at p. 102.)

## C. Severability of Provision Regarding Judicial Review

Despite its finding on the third *Armendariz* factor, the trial court ultimately concluded that the Agreement was *not* unconscionable as a whole because the provision regarding judicial review could be severed.

When unconscionability is shown, the trial court has discretion to "refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).) We review the trial court's decision to sever the provision for abuse of discretion. (*Armendariz*, *supra*, 24 Cal.4th at p. 124.)

In *Armendariz*, the California Supreme Court explained that the trial court's discretion to refuse to enforce an entire agreement based on unconscionability is reserved for instances when the agreement is "permeated" by unconscionability. (*Armendariz, supra*, 24 Cal.4th at p. 122.) Here, the trial court found no other unconscionable provisions in the Agreement. We thus conclude that the trial court did not abuse its discretion in severing the provision prohibiting review of legal error.[3]

## V.    SECTION 229 DEFENSE

Defendant argues that, as the arbitration agreement is not unconscionable, there are no other grounds to deny its motion to compel arbitration of plaintiff's individual claims. Specifically, defendant argues: "There is no dispute that California law permits Betancourt's individual claims for retaliation and wrongful termination to be subject to arbitration, as Section 229 is inapplicable to those claims." Section 229 provides: "Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." This exemption from arbitration is analyzed on a claim-by-claim basis. (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 684 [directing trial court to

---

[3] At oral argument, plaintiffs argued that the trial court's findings on unconscionability, coupled with "*Gentry* unconscionability," could have afforded it with discretion to refuse to enforce the agreement as unconscionable. Plaintiffs took a contrary position in their brief, however, accusing defendant of improperly confusing the unconscionability test with the *Gentry* factors. We agree that the test on unconscionability of a contract or a contract term is separate from the *Gentry* test on enforceability of a class action waiver. (*Arguelles-Romero v. Superior Court* (2010) 184 Cal.App.4th 825, 836–837 [explaining that "the Supreme Court has established two separate tests which should be considered separately"].)

stay proceedings on one cause of action as exempt under section 229 and compel remaining causes of action to arbitration].)

We agree that plaintiff has not asserted the section 229 defense for either of his two individual claims. Instead, plaintiff argues that the section 229 defense applies to his first cause of action for failure to provide meal and rest periods, because he seeks "30 minutes of time they worked during their meal break." This first cause of action, however, is asserted as a class claim. As defendant only moved to compel plaintiff's *individual* claims, not his *class* claims, we need not address this section 229 defense.

## DISPOSITION

The order on defendant's motion is reversed, as to that portion denying the motion to compel arbitration of plaintiff's individual claims for unlawful retaliation and wrongful termination. The order is otherwise affirmed.

On remand, the trial court must sever the class action waiver and determine whether to order arbitration of plaintiff's individual claims for unlawful retaliation and wrongful termination pursuant to Code of Civil Procedure section 1281.2.[4]

---

[4] At oral argument, defendant requested that we (1) order arbitration of plaintiff's claims for unlawful retaliation, wrongful termination, *and* violation of the UCL; and (2) instruct the court to stay non-arbitrable claims pending the outcome of arbitration. Both parties also requested, for the first time on appeal, that we provide some instruction to the trial court that classwide arbitration is not permitted because defendant's motion to compel only sought arbitration of plaintiff's individual claims, and the parties did not agree to classwide arbitration.

We reject these requests. As to plaintiff's UCL claim, it was asserted as a class claim and thus is not covered by defendant's motion to compel arbitration of plaintiff's individual claims. As to plaintiff's unlawful retaliation and wrongful termination claims, we reject the request to order arbitration to preserve the trial court's discretion to determine whether to

22

order arbitration of those two claims under Code of Civil Procedure section 1281.2.  As to the instruction against classwide arbitration, we reject the request as unnecessary because defendant only moved to compel arbitration of plaintiff's individual claims.

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Jackson, J.


*Betancourt et al., v. Transportation Brokerage Specialists, Inc./A159528*

Trial Court:        Marin County Superior Court

Trial Judge:        Hon. Stephen P. Freccero

Counsel:            Hersh & Hersh, Mark E. Burton for Plaintiff and
                    Respondent.

                    Roxborough, Pomerance, Nye & Adreani, Drew E.
                    Pomerance and Trevor R. Witt for Defendant and
                    Appellant.